**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JEANETTE JONES, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 17 C 1828 ) ) Judge Ronald A. Guzmán |
| NANCY A. BERRYHILL, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security, | ) ) ) ) ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Jeanette Jones, filed this action for judicial review of the Social Security Administration Commissioner's decision denying her application for benefits. For the reasons explained below, the Court reverses the Commissioner's decision and remands this case for further proceedings.

**BACKGROUND**

Plaintiff applied for disability insurance benefits and supplemental security income benefits in April 2013, alleging a disability onset date of May 23, 2012. Her applications were denied initially and on reconsideration, and she requested a hearing. An Administrative Law Judge ("ALJ") conducted a hearing on October 29, 2015 and heard the testimony of plaintiff and a vocational expert. (R. 34-79, Tr.) On November 24, 2015, the ALJ denied plaintiff's applications. (R. 17-33.) The Appeals Council denied review on January 23, 2017 (R. 1-3), leaving the ALJ's decision as the final decision of the Commissioner, reviewable by this Court under 42 U.S.C. § 405(g). *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017).

# DISCUSSION

The reviewing court may enter a judgment "affirming, modifying, or reversing" the final decision of the Commissioner, "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence"; it may not reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute its own judgment for that of the Commissioner. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004); *see also Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) ("Our review is limited to the reasons articulated by the ALJ in h[is] decision."). Evidence is considered "substantial" if a reasonable person would accept it as adequate to support the conclusion. *Young*, 362 F.3d at 1001. In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). Although the Court's standard of review is deferential, it is "not entirely uncritical," and the case must be remanded where the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

The Social Security regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) if not, whether she has a severe impairment or combination of impairments; (3) if so, whether her impairment meets or equals an impairment listed in the regulations; (4) if not, whether she has the residual functional capacity to perform her past relevant work; and (5) if not, whether she can perform any other work existing in

significant numbers in the national economy. *Id.*; *Skinner v. Astrue*, 478 F.3d 836, 844 n.1 (7th Cir. 2007). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 22.) At step two, the ALJ determined that plaintiff has the severe impairments of hearing loss and arthritis. (*Id.*) At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 23.) At step four, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to "perform medium work as defined in 20 C.F.R. [§] 404.1567(c) and [§] 416.967(c) except she should avoid concentrated exposure to excessive noise of more than moderate intensity and is limited to occupations that do not require fine hearing capability." (*Id.*) At the final step, the ALJ concluded that plaintiff is capable of performing her past relevant work as a shipping and receiving clerk, housekeeping cleaner, and laundry worker, and thus is not disabled. (R. 28.)

On appeal, plaintiff asserts that the ALJ's decision is not supported by substantial evidence because (1) the ALJ improperly evaluated plaintiff's RFC by failing to account for all evidence of limitations resulting from her hearing loss, failing to provide an evidentiary basis for the two specific hearing limitations in the RFC, and failing to provide an evidentiary basis for the conclusion that plaintiff can perform medium work; and (2) the ALJ improperly assessed the credibility of plaintiff's statements regarding the extent of her hearing loss and her inability to pay for hearing aids.

As to plaintiff's hearing, the ALJ's RFC assessment states as follows in relevant part:

3

At the hearing, [plaintiff] testified that she cannot hear in her left ear and has some difficulty hearing with her right ear. She testified that with a soft-spoken person, she must look directly at the person to understand that person. [Plaintiff] testified that she cannot afford a hearing aid and that she could not find a hearing care provider that would accept her insurance, County Care.

. . .

After careful consideration of the evidence, I find that [plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

In terms of [plaintiff's] alleged symptoms and limitations, the medical evidence does not support any greater limitation to [plaintiff's] work-related abilities than those in the residual functional capacity set forth herein. Regarding [plaintiff's] hearing loss and associated alleged limitations, the medical records contain testing results showing hearing loss. However, the most recent test results were found to be unreliable by the audiologist who conducted the testing. In addition, [plaintiff's] treatment providers do not document observed hearing difficulties.

At a consultative examination in May 2013, [plaintiff] reported hearing loss in the left ear with mild difficulty hearing people during a conversation and while watching television. She denied wearing hearing aids, and she denied tinnitus. Upon examination, she was able to understand conversational voice at six feet distance with mild difficulty.

In August 2013, [plaintiff] visited a new primary care provider and requested a referral for audiogram testing. [Plaintiff] underwent an audiological evaluation later that month. She reported gradual hearing loss in both ears, greater in the left ear and periodic tinnitus in both ears. Testing revealed moderately severe sensorineural hearing loss in both ears. Speech discrimination testing revealed good word recognition ability in both ears. The testing notes also state that a hearing aid consultation should be scheduled upon receipt of medical clearance and [plaintiff's] interest.

[Plaintiff] consulted an ear, nose and throat specialist in October 2013. Audiometry revealed moderately severe hearing loss in both ears. Speech discrimination testing showed good word recognition ability in both ears. A hearing aid referral was given.

At a consultative examination on March 11, 2014, [plaintiff] was unable to hear at conversation level from 10 feet away. The consultative examiner frequently needed to speak loudly and repeat questions. [Plaintiff] could not hear finger rubbing in the left ear.

> In June 2015, at my request, [plaintiff] underwent a consultative audiologic evaluation. At that time, she reported gradual hearing loss in her left ear and bilateral constant tinnitus at night. Testing revealed severe hearing loss in the right ear and severe to profound hearing loss in the left ear. Speech reception thresholds were in poor agreement with the above findings, however. Word recognition scores were excellent in the right ear and good in the left ear. The audiologist concluded that the results of testing were not reliable due to the inconsistent responses and results and did not provide an accurate representation of [plaintiff's] hearing sensitivity.
>
> However, observed hearing difficulties, such as difficulty communicating with her health care providers, were not documented by treating sources.
>
> Thus, while the medical evidence indicates that [plaintiff] has the above severe impairment, it does not indicate that this impairment is so severe as to prevent [plaintiff] from performing all basic work activities. [Plaintiff's] hearing loss has been accommodated by precluding work that requires fine hearing capability and by limiting exposure to noise of more than moderate intensity. The medical evidence does not support any further limitations to [plaintiff's] work-related abilities due to hearing loss.

(R. 24-25 (citations omitted).) The ALJ went on to state that while he did not find plaintiff's claims or presentation regarding her hearing loss to be credible, for a number of stated reasons, he gave "little weight" to the opinions of the state-agency medical consultants who opined that plaintiff's impairments were nonsevere. (R. 26-27.) The ALJ explained that while the consultants did not credit the findings of the May 2013 and March 2014 examinations, he gave greater weight to those findings when considering them in combination with the results of the August 2013 audiological testing. (R. 27.) The ALJ concluded his assessment as to plaintiff's hearing with the following statement: "[T]he above residual functional capacity assessment is supported by the medical findings, nature and frequency of treatment, the claimant's activities, opinion evidence and other factors discussed above. I have accommodated her impairments and associated symptoms by limiting her to work at the medium exertional level with additional

limitations as described above. To the extent that [plaintiff] alleges greater limitations, her allegations are not fully credible." (*Id.*)

Plaintiff argues that the ALJ erred by failing to adequately account for the October 2013 testing by the ear, nose, and throat specialist, which revealed moderately severe hearing loss in both ears, as well as the June 2015 audiologic evaluation, which the ALJ requested and which revealed severe hearing loss in the right ear and severe to profound hearing loss in the left ear, but which the audiologist concluded was unreliable due to inconsistencies. The Court agrees. Although the ALJ mentioned the October 2013 results when describing the evidence, he did not explain how those testing results factored into his decision or whether they supported some hearing limitations. As for the evaluation that was done at the ALJ's behest, it appears as if the ALJ implicitly rejected its results because they were unreliable, but it was error not to substantively discuss those results, seek additional information, or explain why reliable results were no longer necessary. *See Collins v. Colvin*, No. 12 C 1880, 2013 WL 5493683, at *2 (N.D. Ill. Sept. 30, 2013) ("Once the ALJ decided to reject the findings of the consultative exam that he had believed was necessary, he had a duty to seek out additional information or explain why he no longer needed the additional opinion."); *Clayborne v. Astrue*, No. 06 C 6380, 2007 WL 6123191, at *5-6 (N.D. Ill. Nov. 9, 2007) (where the claimant was recommended for a consultative examination, the ALJ's finding that its results were inconclusive obligated him to order a second exam or explain why such an exam was no longer necessary).

Plaintiff argues that the ALJ also erred by failing to explain how the evidence of plaintiff's hearing loss led him to preclude work that requires fine hearing capability and avoids

exposure to excessive noise of "more than moderate intensity."[1] The Court agrees that the ALJ did not build a logical bridge between the evidence and these limitations. The ALJ found that certain hearing test results (including the March 2014 examination, which revealed plaintiff could not hear at conversation level from ten feet away) supported "some" hearing limitations. But, as plaintiff points out, the ALJ did not identify any opinion or other evidence that corresponds to the specific limitations imposed (and the Court found none) or otherwise explain why they are warranted by the evidence. That was error. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (an ALJ's failure to explain how he arrived at specific RFC findings is reversible error). The RFC limitations do not appear to be based on any evidence as to what functional limitations plaintiff's hearing loss would be expected to cause. Although administrative error is sometimes harmless, such that a court will not remand a case to the ALJ for further proceedings where it is convinced that the ALJ will reach the same result, *see McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011), the Court is unable to conclude that these errors were harmless. It is entirely possible that the results of a second consultative audiological examination, consideration of all the evidence regarding plaintiff's hearing loss, and further development of vocational evidence would result in a more restricted RFC than was formulated.[2]

---

[1] On page 4 of the decision, the second limitation is referred to as "avoid[ing] concentrated exposure to excessive noise of more than moderate intensity." On page 6, it is phrased differently, as "limiting exposure to noise of more than moderate intensity." (R. 23, 25.)

[2] The Court is unpersuaded, however, by plaintiff's assertion that the ALJ erred by failing to include specific limitations on interactions with others and limitations on exposure to workplace hazards. On this record, where little to no evidence was developed regarding what functional limitations plaintiff's hearing loss would be expected to cause, the Court cannot conclude that that was error. Of course, such limitations may be appropriate if warranted by further evidentiary development on remand.

Plaintiff also contends that the ALJ failed to provide an evidentiary basis for the conclusion that plaintiff can perform medium work. The Court agrees. As to plaintiff's arthritis, the ALJ discussed the evidence and concluded that while plaintiff "has the severe impairment of arthritis, [the medical evidence] does not indicate that this impairment is so severe as to prevent the claimant from performing all basic work activities. The claimant's arthritis has been accommodated by limiting her to work at the medium exertional level. The medical evidence does not support any further limitations to the claimant's work-related abilities due to arthritis." (R. 26.) While the ALJ gave "little weight" to the opinion from plaintiff's examining physician, who opined that plaintiff has twenty percent reduced capacity to walk, bend, stand, stoop, sit, turn, climb, push, and pull and that plaintiff can lift no more than ten pounds at a time, the ALJ did not tie to any specific evidence his conclusion that plaintiff has the ability to perform medium work. That error also warrants reversal and remand. *See Taylor*, 425 F.3d at 352; *Newell v. Astrue*, 869 F. Supp. 2d 875, 891 (N.D. Ill. 2012).

Accordingly, this case will be remanded for further proceedings consistent with this opinion. Plaintiff also contests the ALJ's credibility finding regarding the extent of her hearing loss and her inability to pay for hearing aids, and because that issue is intertwined with the assessment of plaintiff's RFC, it will have to be revisited on remand as well.[3]

## CONCLUSION

The Court finds that the ALJ improperly evaluated plaintiff's residual functional capacity. Therefore, the Court grants plaintiff's motion for summary judgment, reverses the

---

[3]The Court will note that there is no support for the ALJ's assertion that "[i]t is not reasonable that a public aid health care provider would have referred [plaintiff] to a hearing aid provider that would not accept her insurance," (R. 27), nor does it strike the Court as a conclusion compelled by common sense.

Commissioner's decision, and remands this case for further proceedings consistent with this Memorandum Opinion and Order.

**DATE**:  July 19, 2018

_____
**Ronald A. Guzmán
United States District Judge**